IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

United States of America )
Plaintiff )
) 04C2647
v. ) CIVIL Case No.
Matthew J. Giralamo ) CRIMINAL Case No. 01 CR 475-1
Defendant )
)

NOTICE OF FILING

TO: U.S. Attorney Dirksen Building 219 South Dearborn Chicago, Illinois 60604

Please be advised that on this 13 Day of May 2004, I have caused to be filed with the Clerk of the Court for the Northern District of Illinois Eastern Division, the following,

MEMORANDUM IN SUPPORT OF §2255 MOTION ATTACHED HEREIN

FILED

MAY 21 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

to which a true and correct copy is now served upon you.

Matthew J. Giralamo

PROOF OF SERVICE

On this 13 day of May 2004, I have caused to be served upon the above stated parties a true and correct copy of the above stated document by inserting such true and correct copy of the above stated document in a first class postage prepaid envelop properly addressed and deposited such in the inmate mail system at FPC Terre Haute POB 33 Terre Haute, Indiana 47808.

Matthew J. Giralamo

DOCKETED
MAY 24 2004

Matthew J. Giralamo
Reg. No. 13674-424
FPC Terre Haute
POB 33
Terre Haute, Indiana 47808

6

MEMORANDUM IN SUPPORT OF §2255 MOTION TO BE READ IN CONJUNCTION WITH §2255 MOTION

FILED

04C 2647

MAY 2 1 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAY 2 4 2004

**Procedural History of the Case**

On May 17, 2001, a multi-count indictment was returned alleging fraud 18 U.S.C. § 1343, Uttering forged and counterfeit secutities, 18 U.S.C. § 513 A, and aiding and abetting, 18 U.S.C. § 2. Matthew J. Giralamo was named in five of the counts, namely 1, 6, 13, 14, and 15. He was released on a $4500.00 own recognizance bond. The case continued with status hearings, and many continuances until on February 13, 2002, Mathew J. Giralamo ("Matthew") changed his plea from not guilty to a guilty plea. At that hearing, Judge Joan Lefkow presided. The prosecutor, Mr. Chung stated for the court the allegations of the criminal scheme, the notable parts being,

> "...Mr. Giralamo participated in the scheme in or about January of 1999... did in fact cause a parcel to be delivered by UPS in violation of the Mail Fraud Statute. ...participated in about four separate transactions that were part of this overall scheme ...obtaining...counterfeited cashier's check from co-schemer Carlton Pitts, a co-defendant in this case...[who] ...obtained those checks from...Anthony Scott. ... After having obtained those checks, Mr. Giralamo and ...Individual A, then provided them to ...another individual who passed those checks in exchange for motorcycles and mail order merchandise... The aggregate value of those four checks that were part of the charged scheme was approximately $28,673. ...Mr. Giralamo ...and ...Individual A ...obtained the merchandise that was purchased with the counterfeited checks and either held on to the merchandise for some period of time or in fact turned around and sold the merchandise and split the proceeds. ...The specific mailing that is alleged...is a UPS mailing that involved motorcycle accessories with a value of approximately $1600....as part of the plea negotiation process, Mr. Giralamo has acknowledged a significant amount of relevant conduct...Mr. Giralamo has acknowledged passing additional....counterfeited cashier's checks. ...they were made by the defendant himself, [illegible] individual...A. ...Those checks had an aggregate face value of in excess of $220,000.00......used...to purchase merchandise or to obtain cash. ... There is...a separate, yet related, scheme...Mr. Giralamo caused certain check card accounts to be debited or to be charged to make it appear as though the people holding those credit cards had in fact purchased the goods or services from the store that Mr. Giralamo has referred to...was operating in a suburb of Chicago...Those services and goods had never in fact been purchased, but the charges indicated that such goods or services in the amount of $36,000...has in fact been made by the victims of that particular scheme.. in yet another related scheme, the defendant made counterfeited credit card convenience checks off of a Mastercard credit card account ....those checks had an aggregate face value of approximately $17,000. ...That in essence, ...is what the government's evidence would show as to both the charged conduct, the four checks that I initially identitied, and then the relevant conduct that followed the charged conduct..."

2/13/02 plea transcripts at p. 15-18.

Continuances were had, and finally on April 11, 2003, a sentencing was held.

6

The pre-sentence investigation report calculated the sentence as follows: Specific Offense pursuant to 2F1.1(b) at level 6, with an additional 8 levels for amount of loss of $306,242.37, which is the total amount of the loss as attributable to the many defendants, noting that at sentencing, it was established that Matthew is accountable for $101,628.83 in restitution. To that, 2 levels were added for more than minimal planning, or the scheme involved more than one victim as it involved 16 victims, and according to U.S.S.G. §3B1.1 (b), and there were two levels added for the use of a minor under §3B1.4. It should be noted that the role in the offense enhancement was due to the allegation that Matthew directed four of his shop's employees in the schemes, and that one of his employees, Vince Maverick, by his being a minor caused the use of a minor role enhancement.

The criminal allegations the case presents is that Matthew instructed Vince Maverick, Jim Enders, Michelle Dzwerum and Edil Vegia, who were employees of Matthew's shop in Elmhurst, Illinois. The essential gist is that he used his work and computers to generate counterfeit checks. Also, the business bank account was used for credit card transactions, along with working closely with Aldo

Specifically, and historically, what happened was that the activities were started by one George Jerzinski (sic) who was the son of a Chicago Police Officer. George Jerzinski committed suicide likely due to the impending charges that resulted in this case. Aldo, who worked for George broke away from George, and recruited his cousin, Louis, a Bellwood, Illinois Police Officer to act as a "buffer" for him during criminal activities. During this time. Aldo had a tendency to hang out at Matthew's shop. Michelle, a former employee, hung out at the shop as well. She subsequently worked at Neiman Marcus in Oak Brook, Illinois, but left there under questionable circumstances. Vince, the minor, was a car washer at the shop, earning extra money, and Jim worked there as well. Aldo recruited Vince and Jim to work with him offering much higher pay than Matthew, but the work was working within the fraud schemes. During the course of

the allegations related to the time period, neither Michelle or Edil worked for Dynamic Detailing, they just "hung out".

At various times, Matthew would purchase items from Aldo. What would happen is that Aldo would have Vince, Jim, Michelle or Edil go to places to purchase items with cashier checks Aldo gave to them. [What is noteworthy is that throughout the case, the government maintains that Matthew was involved in the cashier check scheme including manufacturing them, but the government's own evidence, a fingerprint analysis of all the checks confirms that Matthew's fingerprints were no where to be found on the checks--which would defy logic as they should have been somewhere if Matthew would have been the one making the checks as he would have handled them --at least one of them--at some point during the printout of the checks--but that establishes that there is no physical link between Matthew and the checks, only Aldo and the various parties--hence, even though Aldo may have used Matthew's printer, it does not mean, nor can logically conclude that Matthew was the creator of the checks--as he was not].[1] What must be kept in mind is that without Aldo giving these people the checks, there would have been NO fraud committed as the checks were critical in order for the defrauded people to turn over the merchandise. No victim would turn over merchandise without at least thinking they were paid. That too would defy logic. Essentially, the sum of this is that Matthew was a purchaser--there is no way possible the fraud would have happened had there been no checks from Aldo. Matthew knew everyone involved, and yes, some did work for him at Dynamic Detailing, that cannot be denied as payroll records would prove that out, but two did not, The pre sentence investigation report does state that he

1 It should be noted that the government did not seek a forfeiture of the Dynamic Detailing, the alleged location of the criminal events, nor confisicated Matthew's computers, the alleged check manufacturing tool. There is a difference between the sentencing amounts (over $300,000.00) and the amount of the restitution (about $100,000.00) which was never rectified, nor dealt with on the record of the proceedings. The PSI lists about $95,000.00 in restitution due. What should happen is that there at a minimum be a hearing regarding the amounts as there is no consistency when there should be consistency, which Matthew will file a motion in those regards shortly after this, noting that may also encompass an amendment to this memorandum.

direct the employees. However, as stated, there is no evidence at all that has Matthew directing the employees in the criminal undertakings. There is evidence that Matthew did receive merchandise, however, as established, there would have been no fraud had Aldo not given the checks to the various parties. The fraud would have been impossible otherwise.

The sum of the facts is simply stated. Matthew received goods, but in the conspiracy, he did not manage anyone, the same people who worked for Aldo worked for Matthew, but the work for Matthew was legal and related to Dynamic Detailing, while the work for Aldo was illegal related to the criminal actions.

**The vehicle to Sentencing Issues in a 28 U.S.C. § 2255 motion**

Up to 2002, sentencing issues in a §2255 motion were taboo. See, Durrive v. U.S., 4 F. 3d 548 (7th Cir. 1993). The climate changed to where Circuit Judge Easterbrook speaking for the circuit held that the case of Glover v. U.S., 531 U.S. 198 (2001) reversed the circuits prior Durrive holding and stated that "...the approach to prejudice articulated in Strickland v. Washington, 466 U.S. 668 (1984)...rather than that of Lockhart v. Fretwell, 506 U.S. 364 (1993)... applies to claims of ineffective assistance with respect to sentencing...". Now, the Supreme Court and the Seventh Circuit are clearly in line. In order to bring a sentencing claim inside of a post conviction proceeding, the §2255 petitioner MUST do so through the Strickland ineffective assistance test. The test is that the petitioner must establish cause and prejudice. Id. And Glover stands for clarifying not only the applicable standard, but also the proposition that a federal criminal defendant is entitled to be sentenced to the correct punishment, no more, n
no more, no less. Taylor v. Gilkey, 314 F. 3d 832, 834 (7th Cir. 2002).

unequivical

Now knowing this is unequival, and can not be disputed, the discussion turns to the Strickland, supra., standard. Considering this is well known, and the petitioner herein presumes the Court (and the government as well) are versed in the standard, it will be a brief presentation.

The cornerstone of Ineffective Assistance of Counsel ("IAC") is set forth in Strickland, Id., The Sixth Amendment to the U.S. Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. McMann v. Richardson, 397 U.S. 749 (1970); Morrison v. Duckworth, 898 F. 2d 1298 (7th Cir. 1990).

In Strickland, Id., the Supreme Court established a two-prong test with which to evaluate ineffective assistance of counsel claims, namely, (1) that counsel's performance fell below an objective standard of reasonableness, and, (2) that counsel's deficient performance prejudiced the defendant resulting in an

unreliable or fundamentally unfair outcome of the proceedings. Strickland, Id. supra, at p. 687.

Although a court may conclude that a single error rendered counsel's performance ineffective, it must consider the totality of the circumstances in making its determination. Strickland, Id., at p. 690.

Additionally, a court that finds a defendant has failed to satisfy one prong of the Strickland test, need not consider the other prong. U.S. v. Booker, 981 F. 2d 289 (7th Cir. 1992); compare, U.S. v. Faubion, 19 F. 3d 226 (5th Cir. 1994).

In approaching the test, the first prong, the performance prong, there is a "strong presumption" that counsel's strategy and tactics fall "...within [the] wide range of reasonable, professional assistance.", Strickland, supra., at p. 689;

The second prong has courts deciding whether the deficient performance prejudiced the defense. The question is whether "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." For the most part, most attorneys are presumed to be effective, and the inquiry does not pass muster during the inquiry.

For a proper claim of ineffective assistance of counsel, it "...is a mixed question of law and fact. Such a claim requires a two-part inquiry." Strickland, supra., at 687.

Valid claims relate to deficiencies such as the lawyer did not thoroughly investigate the facts surrounding the charge, and possible defenses. Others include the lawyer's failure to prepare adequately, and did not verify or test the government's case. And just as important, the lawyer did not obtain any evidence, much less discern the true application of the evidence.

When counsel omits significant and obvious issues in pursuit of a weak issue Ineffective Assistance of Counsel("IAC") results. Mayo v. Henderson, 13 F. 3d 528, 533-36 (2nd Cir. 1994); failure to preserve issues for appeal results in IAC, Jackson v. Herring, 42 F. 3d 1350 (11th Cir. 1995); counsel's failure to file a motion regarding suppression is not sound trial strategy, Rodriguez v. Young,

906 F. 2d 1153 (7th Cir. 1990);

In this case, counsel did not file any motions, nor contest anything at all related to the government's case. He simply accepted on behalf of the petitioner the government's case in total. It is obvious from the fact pattern that many key and essential facts are missing. Facts that affected Matthew's sentencing. The Manager/Supervisor role attributed to Matthew is error in total. When going to even the stated facts, it is assumed that Matthew directed the various employees and those "hanging out" at Dynamic Detailing, but was that in relation to the criminal activities, or was it in relation to the business that was legitimate? Is it true that the employees and hangers on had double lives? Yes, and it is clear as they worked for Matthew at their legitimate jobs, and for Aldo at the criminal activities. Nothing would have been done had it not been for Aldo's work in creating the checks. Matthew was in the wrong place at the wrong time. He did in fact purchase merchandise from the conspiracy, that much is true, those people including Aldo did in fact hang out at Dynamic Detailing, that is true, and the checks, which were fingerprinted having NO fingerprints from Matthew, were made by Aldo and given to the parties directly, that is true. So what did Matthew do? He purchased goods. He is guilty of that. Yet, counsel did not bring that to the Court's attention. He should have. That alone prejudiced Matthew by a 3 level increas in his sentencing. He should have not received those 3 levels. In arregguendo, the government would likely maintain that how could Matthew not known about the group's activities, but that would be a distraction not going to the heart of the matter. Th[illegible]

going on, but he did not direct them, nor supervise those people in those endeavors during the course of the conspiracy. As said, he supervised them at their legitimate jobs, and he purchased merchandise. As a result he was prejudiced by these three levels of additional punishment that he should not have received.

In regards to the enhancement for using a minor in criminal activities, Matthew did not direct Vince, other than his job at Dynamic Detailing. Notably,

it must be understood that a teen ager having the Aldo's proverbial carrot dangling of making $300 or $500 for little work, in comparison to working at Dynamic Detailing and earning that much in a week or two is powerful incentive for him to work for Aldo. It was and is the truth as to what happened. There is no way that Matthew directed him. The relationship in the criminal endeavors was between Aldo and Vince, not Matthew and Vince. Who gave the checks to Vince? Aldo. What would have happened had Aldo not given the checks to Vince? Nothing. So what does Matthew have to do with it? Nothing. This failure of counsel to bring this to the court's attention prejudiced him too to the level of 2 additional levels of punishment that should not be attributed to Matthew, but unfortunately it was, however, this proceeding can correct that.

Now, what facts that should be brought to the court's attention to prove this. First, none of the checks, including the ones allegedly printed off of Matthew's computer bore his fingerprints. Second, in a photolineup, the government would have to concede that Matthew was NOT identified by even one victim. Third, there is no tie to Matthew managing the various parties, the minor included, in the criminal activities. And most importantly is the inference that it is not unbelievable that [illegible] what is so unbelievable that Matthew was a purchaser? Nothing, because that is what it was, he was not a leader, nor was he responsible for Vince at all.

Overall, the IAC provides the vehicle for Matthew being prejudiced to the point of having 5 levels of sentencing attributable to him that should have not been had counsel presented the case properly to the court, but did not.

**The adjustment for Role in the Offense**

U.S.S.G. §3B1.1 provides three different increases in offense levels depending upon the situation a case poses. They are

> "...Based on the defendant's role in the offense, increas the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels. ..."

This becomes a fact question for the sentencing court to resolve, and it is not disturbed unless there is clear error. U.S. v. McKenzie, 922 F. 2d 1323, 1329 (7th Cir. 1991).

The enhancement may be applied only when there is another participant in the offense. U.S. v. Mustread, 42 F. 3d 1097, 1103 (7th Cir. 1994)

The participant must be criminally responsible for the offense, but need not be convicted. U.S. v. Carson, 9 F. 3d 576, 584 (7th Cir. 1993). For the 3 or 4 level enhancement, there must be either five or more participants which includes in counting, the defendant. Id. or otherwise extensive. U.S. v. Mansoori, 304 F. 3d 635, 668 (7th Cir. 2002)(looking to the complex facts of the case taken collectively resulting in the criminal activity being done), which is fact driven. It becomes the facts that drive the enhancement. In broaching the test, which is in the Seventh Circuit's geneology of the citation, the test is simple,

> "...the court applying subsection (a) [or (b)] first asks whether the defendant acted as an organizer/leader of a specific criminal activity. If so, the court asks the separate question of whether that criminal activity involved five or mor participants, defined in the Commentary as persons who are "criminally responsible for the commission of the offense...""

U.S. v. Preakos, 907 F. 2d 7, 10 (1st Cir. 1990)

The Seventh Circuit affirmed U.S. v. Weidner, which in applying the "otherwise extensive" meaning as being,

> "..."otherwise extensive" within the meaning of §3B1.1(a). See Application Note 2. ....Application Note 3 directs the court to consider "the exercise of decisionmaking authority, the nature of participation in the commission of the offense, the recruitment of accomplices...the degree of participation and planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over the others.."

U.S. v. Weidner, 703 F. Supp. 1350, 1354 (N.D. Ind. 1988)

Thus, in order to apply the increased 3 or 4 levels, one would turn to the case's facts.

In this case, there is proofs (facts) to support the 3 or 4 level increase. Had Aldo not made the checks, there would have been no offenses. There is no evidence supporting that Matthew was a manager, other than the PSI stating that he was a manager for purposes of directing the employees of Dynamic Detailing, which is true, but that was in legitimate business.

Without repeating, Matthew submits that the IAC section of this memorandum supports not only the procedural vehicle, but also the factual support that his constitutional rights were violated in that he was prejudiced in having a manager role attributable to him. In regards to the specific criminal activity that was within the scope of the conspiracy, Matthew was not a manager, and his actions through a keen eye to the factual condition bear that out.

**The use of aminor in a criminal scenerio**

Section 3B1.4 of the U.S. Sentencing Guidelines provides for a two level enhancement "[i]f the defendant used or attempted to use" a minor to commit a crime. Application Note 1 further clarified that "used or attempted to use" includes directing, commanding, training, procuring, recruiting, or soliciting." Id. Use requires the "affirmative involvement of the minor in the crime. See, U.S. v. Hodges, 315 F. 3d 794, 802 (7th Cir. 2003) relying upon U.S. v. Ramsey, 237 F. 3d 853, 859 (7th Cir. 2001). This is reviewed under the de novo standard for legal interpretation, and the factual questions are reviewed for clear error. Hodges, supra., 315 F. 3d at 801. §3B1.4 applies even to minor use of a minor, U.S. v. Vivit, 214 F. 3d 908, 920 (7th Cir. 2000), but there must be evidence to establish that the minor was used by the defendant during the course of the crime. cf., U. S. v. Blalock, 321 F. 3d 686, 690 (7th Cir. 2003). Hence, the enhancement is easily applicable in a case so long as the defendant given that enhancement is responsible for directing (using) the minor in the criminal acts. See, U.S. v. Anderson, 259 F. 3d 853 (7th Cir. 2001).

In this case at bar, Matthew employed the minor, Vince Mavrick. Matthew admits that he employed the minor, but that the employment was related solely and directly to the minor's employment at his place of business.

The Pre-sentence investigation report conducted for the benefit of the court states at the sentence calculation that Matthew used Vince in the schemes, but that was an advisement by agent Shakem, but that advisement dealt with Matthew in relation to supervising Vince at Dynamic Detailing, not in any criminal activity. The facts bear that out, noting that the facts do not point to any specific activity of a criminal nature that could possibly result if any of the transactions were of Matthew supervising Vince. That was impossible, but that all points to Aldo. Overall, Matthew did NOT use Vince in any criminal activity. He merely purchased goods, not supervised the frauds that those parties partook in.

**Related but issues affecting this proceeding**

There are two issues that affect this proceeding that Matthew submits that he has not procedurally defaulted. One is whether he waived the right to proceed in this matter ("waiver"), and the second is whether he can avoid the consequences of his plea (and resulting plea agreement) by proceeding in this matter.

Turning to waiver, for the most part, courts "...indulge every reasonable presumption against waiver of fundamental constitutional rights". Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

In the guilty plea situation, like this instant case, "a guilty plea for federal purposes is a judicial admission of guild conclusively establishing a defendant's factual guilt." Lefkowitz v. Newsome, 420 U.S. 283, 299 (1975) (White, J. dissenting). Generally, the defendant who pleads guilty is "convicted on his counseled admission in open court that he committed the crime charged against him," McMann v. Richardson, 397 U.S. 759, 773 (1970) because that type of conviction normally rests upon the defendant's own admissions. Id., McMann, 397 U.S. at 766. The Court in Brady v. U.S., 397 U.S. 742 in dictum stated that "[t]he importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him" became the center of McCarthy v. U.S., 394 U.S. 459 (1969). The decision to plead guilty must be intelligent and based upon the real notice of the true nature of the charge. Henderson v. Morgan, 426 U.S. 637, 645 (1976). The petitioner must possess an understanding of the law in relation to the facts. McCarthy, supra., 394 U.S. at 466-67. Importantly, regarding constitutional rights in this context, the Supreme Court lends guidance for the approach,

> "...When Constitutional rights turn on the resolution of a factual dispute we are duty bound to make an independent examination of the evidence in the record ..."

Brookhart v. Janis, 384 U.S. 1, 4 (1966) (citing Edwards v. South Carolina, 372 U.S. 229, 235 (1963).

Further, the rules applicable to §2255 motions provide for expansion of the

record "relevant to the determination of the merits of the motion." See, 28 Foll. ¶2255, Rules Governing §2255 Proceedings Rule 7.

In turning to waiver in a plea situation, the Supreme Court, Justice Kennedy speaking for the court ruled that because the defendants have not called into question the voluntary and intelligent nature of their please, they are not entitled to collateral relief, hence, the converse, as this case does, calls into question the voluntary and intelligent nature of the plea, it is properly presented. See, U.S. v. Broce, 488 U.S. 563 (1989).

The Court in its discussion re-affirmed the long standing Supreme Court holdings regarding the issue of a guilty plea as a waiver. Specifically, it must be a counseled one, Id., 488 U.S. at 573-74, and voluntary, Id., 488 U.S. at 570, in other words, a constitutionally valid one. The expanded record of a colateral proceeding is a proper way to establish the constitutional claims. cf. Id., 488 U.S. at 576.

Uustice Blackmun joined by Justices Brennan and Marshall pointed out in their dissent a truism in that "if a claim that the Government was without power to prosecute is apparent on the face of the indictment, read in light of the existing record, a court should not consider the claim to have been waived, and must go on to consider the merits." Id., 488 U.S. at 583.

Therefore, in keeping true to the vein of U.S. v. Timmreck, 441 U.S. 780 (1979), collateral review of a criminal conviction based upon a plea of guilty serves finality so long as the waiver based upon a plea of guilty is not in violation of the constitution, is not a fundamental miscarriage of justice, or is not based upon the court lacking jurisdiction. This case lacks being not in violation of the constitution.

A guilty plea must be voluntary and intelligent, Brady, supra., 397 U.S. at 748, and must certainly be knowingly made. U.S. v. Kraus, 137 F. 3d 447, 453 (7th Cir. 1998). There must be an understanding of the charges and the consequences. McCarthy v. U.S., 394 U.S. 459 (1969), and the plea must comprehend all the

factual and legal elements necessary to sustain a binding and lawful conviction and sentence. See, Broce, supra. Waiver may attach, but it must be knowing and informed. See, U.S. v. Baty, 980 F. 2d 977, 979 (5th Cir. 1992).

In concluding and collectively looking to waiver and the plea issues that result, it becomes apparent that one looks to see whether the defendant was fully apprised of the offense, and that it was fully supported in fact and in law. If not, then waiver does not attach, and further, the plea in those regards needs to be addressed in the §2255 proceeding.

In looking to this case, the government would want to maintain that Matthew pled, therefore, he waived all the issues. However, that is not true. He did not waive any right to a correct statement of facts that support the criminal conviction. Anyone reviewing the facts of the case--including Prosecutor Chung's rendition to this Honorable Court giving him full deference--can find no evidence at all that Matthew was either a manager or supervised or used a minor in any criminal offense. Certainly a well experienced federal prosecutor such as Mr. Chung would have told this Court that, and would have assured clarity in the PSI, but did not. At some points in the plea and sentencing this should have been identified and the court should have made correct findings, but that was not done. That could not be done as there are no facts to support any such finding. Mr. Chung has an obligation to the court to do so, but kept quiet in those regards, reightfully so, he wanted 5 extra levels of punishment from Matthew, and he got just that, never expecting to be called on the carpet for such an error. Certainly, he can not urge waiver, he did not disclose, nor did Matthew's attorney disclose to this Honorable Court any information related to these issues. They all sat silent, leaving Matthew, an admitted ignoramous to the law, sitting there taking additional punishment that should have never been attributable to him, but it was. There is no waiver, and certainly had Matthew known what he has identified as voids in his case, he would have brought this to the court himself. He could have and should have had proper representation, but did not. That constitutional issue can not be waived, and his plea needs to be corrected to the correct facts, and ultimate

the correct sentencing based upon those facts.

**Summation**

In addressing the case directly, this case presents four issues, three of which are dealt with in this filing.[2] The procedural vehicle is the IAC, which is grounded upon an application of Glover, supra., and Taylor, supra. Counsel was ineffective. There is no where in this Court's record that anyone can point with any specificity that Counsel did anything at all in regards to testing the government's case at all. There is no where that anyone can point to the record and identify any presentation that counsel made to the court regarding the sentencing enhancements. There is nothing. It is counsel's failure to advise this court properly regarding Matthew's lack of being a supervisor in the criminal activities, along with being not involved as bringing a minor to the criminal activity that caused Matthew to be prejudiced resulting in his being punished to five additional levels that should have not been attributable to Matthew.

WHEREFORE, MATTHEW REQUESTS THAT THIS HONORABLE COURT ENTER THE RELIEF IN ACCORDANCE WITH THIS MEMORANDUM, and for such other and further relief as this Court deems just and fair.

Respectfully,

Matthew Giralamo

Matthew Giralamo
13674-424
FPC Terre Haute
POB 33
Terre Haute, Indiana 47808

---

2 As stated in footnote 1, infra. Matthew will be making another motion to this Honorable Court for the purposes of a hearing of the restitution amount in relation to the sentencing amounts. Also, what must be noted further, as part and parcel of that motion, Matthew will support the first ground related to that motion that is part of the §2255 motion.